1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   EMMETT DAVIS,                        No.  2:24-cv-02166 SCR P

12              Plaintiff,

13        v.                              ORDER

14   T. TYLER, et al.,

15              Defendants.

16

17        Plaintiff is a state prisoner proceeding pro se with a civil rights action under 42 U.S.C. §

18   1983.  Plaintiff's complaint is before the undersigned for screening pursuant to 28 U.S.C. §

19   1915A.  (ECF No. 1.)  Plaintiff has also filed a motion to proceed in forma pauperis (ECF No. 2).

20                          **IN FORMA PAUPERIS**

21        Plaintiff requests leave to proceed without paying the full filing fee for this action, under

22   28 U.S.C. § 1915.  Plaintiff submitted a declaration showing that he cannot afford to pay the

23   entire filing fee.  See 28 U.S.C. § 1915(a)(2).  Accordingly, plaintiff's motion to proceed in forma

24   pauperis is granted.  This means that plaintiff is allowed to pay the $350.00 filing fee in monthly

25   installments that are taken from the inmate's trust account rather than in one lump sum.  28

26   U.S.C. §§ 1914(a).  As part of this order, the prison is required to remove an initial partial filing

27   fee from plaintiff's trust account.  See 28 U.S.C. § 1915(b)(1).  A separate order directed to

28   CDCR requires monthly payments of twenty percent of the prior month's income to be taken

                                        1

1    from plaintiff's trust account. These payments will be taken until the $350 filing fee is paid in

2    full. See 28 U.S.C. § 1915(b)(2).

3                   **STATUTORY SCREENING OF PRISONER COMPLAINTS**

4         The court is required to screen complaints brought by prisoners seeking relief against "a

5    governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). In

6    performing this screening function, the court must dismiss any claim that "(1) is frivolous,

7    malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief

8    from a defendant who is immune from such relief." Id. § 1915A(b). A claim is legally frivolous

9    when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325

10   (1989). The court may dismiss a claim as frivolous if it is based on an indisputably meritless

11   legal theory or factual contentions that are baseless. Neitzke, 490 U.S. at 327. The critical

12   inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and

13   factual basis. See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989).

14        In order to avoid dismissal for failure to state a claim a complaint must contain more than

15   "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause

16   of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-557 (2007). In other words,

17   "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

18   statements do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A claim upon which the

19   court can grant relief has facial plausibility. Twombly, 550 U.S. at 570. "A claim has facial

20   plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

21   inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. When

22   considering whether a complaint states a claim, the court must accept the allegations as true,

23   Erickson v. Pardus, 551 U.S. 89, 93-94 (2007), and construe the complaint in the light most

24   favorable to the plaintiff, Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

25                       **PLAINTIFF'S COMPLAINT**

26        The events underlying plaintiff's complaint occurred at Solano State Prison. (ECF No. 1

27   at 1.) The complaint names eight defendants, all employed at the prison: (1) T. Tyler; (2) M.

28   Calderon; (3) A. Valenzuela; (4) C. Carozzo; (5) W. Foreman; (6) R. Mitchell; (7) M. Hintz; and

1   (8) R. Thibodeaux.  (Id. at 8.)  All defendants are sued in their individual capacities only.  (Id.)

2   　　　Plaintiff is a 76-year-old military veteran.  He has wounds from serving two tours in

3   Vietnam and suffers from numerous medical conditions, including PTSD, seizures, sleepwalking,

4   sleep apnea, and cancer, that preclude doubled-cell housing.  (ECF No.1 at 9.)  Plaintiff has

5   injured himself numerous times from sleepwalking episodes.  (Id. at 10.)

6   　　　Defendants stripped his single-cell status on November 17, 2017, and refuse to restore it.

7   (ECF No. 1 at 9.)  Defendants are violating CDCR's guidelines by granting single-cell status only

8   under the "in-cell violence" standard.  The classification committee waits until after a cellmate is

9   assaulted before awarding single-cell status.  Plaintiff says he is vulnerable to violence because of

10  his medical conditions and age, and has had in-cell violence in the past.  (Id. at 10.)  His sleep

11  apnea requires him to keep the lights on, which is known to cause conflict.  (Id. at 13.)

12  　　　On February 2, 2024, plaintiff received a rules violation report ("RVR") for refusing to

13  double cell.  (ECF No. 1 at 9.)  He receives at least five RVRs per each six-month period for

14  refusing double-cell status.  (Id. at 11.)  The RVRs have negated plaintiff's parole and caused him

15  to lose privileges, including loss of "opportunity to have a diet other than state cooked food."  (Id.

16  at 10-11.)

17  　　　The complaint alleges two causes of action: (1) cruel and unusual punishment; and (2)

18  deliberate indifference.  (ECF No. 12-13.)  Plaintiff also states that he is eligible for single-cell

19  status based on the CDCR guidelines, which creates a "liberty interest."  (Id. at 13.)  As relief,

20  plaintiff seeks $3.5 million in damages and expungement of his RVRs.  (Id. at 15.)

21  　　　　　　　　　　　　　　　**LEGAL STANDARDS**

22  **I.    42 U.S.C. § 1983**

23  　　　A plaintiff may bring an action under 42 U.S.C. § 1983 to redress violations of "rights,

24  privileges, or immunities secured by the Constitution and [federal] laws" by a person or entity,

25  including a municipality, acting under the color of state law.  42 U.S.C. § 1983.  To state a claim

26  under 42 U.S.C. § 1983, a plaintiff must show that (1) a defendant acting under color of state law

27  (2) deprived plaintiff of rights secured by the Constitution or federal statutes.  Benavidez v.

28  County of San Diego, 993 F.3d 1134, 1144 (9th Cir. 2021).

## II.    Linkage

Section 1983 requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See Monell v. Department of Social Services, 436 U.S. 658, 694 (1978); Rizzo v. Goode, 423 U.S. 362, 370-71 (1976).  Plaintiff may demonstrate that connection by alleging facts showing: (1) a defendant's "personal involvement in the constitutional deprivation," or (2) that a defendant set "in motion a series of acts by others" or "knowingly refus[ed] to terminate a series of acts by others, which [the defendant] knew or reasonably should have known would cause others to inflict a constitutional injury." Starr v. Baca, 652 F.3d 1202, 1207-08 (9th Cir. 2011) (quotation marks and citation omitted).

## DISCUSSION

### I.    Eighth Amendment Excessive Risk to Health and Safety

Liberally construed, plaintiff's complaint alleges that a double-cell housing assignment would create an excessive risk to his health and safety in violation of the Eighth Amendment. Specifically, the undersigned interprets the complaint as asserting that: (1) defendants were deliberately indifferent to the risks of double-celling associated with plaintiff's medical conditions and vulnerability to violence; and (2) the RVRs for refusing a cellmate constitute cruel and unusual punishment.

### A.    Excessive Risk of Harm from Double-Celling

A prisoner does not have an Eighth Amendment right to be housed in a single cell. Rhodes v. Chapman, 452 U.S. 337, 347-48 (1981).  However, the Eighth Amendment imposes on prison officials a duty to "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (citing Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)).  This includes a duty to protect prisoners from violence at the hands of other prisoners. Id. at 833.  Thus, only where prison officials are alleged to know that a housing assignment poses an excessive risk to an inmate's safety will placement with another inmate raise constitutional implications.  Estate of Ford v. Ramirez–Palmer, 301 F.3d 1043, 1050 (9th Cir. 2002).

To state an Eighth Amendment claim based on a failure to protect, a plaintiff must allege

1   that prison officials were "deliberately indifferent" to "conditions posing a substantial risk of

2   serious harm." Farmer, 511 U.S. at 834.  A prison official acts with deliberate indifference only

3   if he "knows of and disregards an excessive risk to inmate health and safety; the official must

4   both be aware of facts from which the inference could be drawn that a substantial risk of serious

5   harm exists, and he must also draw the inference." Id. at 837.  "Liability may follow only if a

6   prison official 'knows that inmates face a substantial risk of serious harm and disregards that risk

7   by failing to take reasonable measures to abate it.'" Labatad v. Corr. Corp. of Am., 714 F.3d

8   1155, 1160 (9th Cir. 2013) (quoting Farmer, 511 U.S. at 847).

9          Here, even assuming plaintiff's alleged medical needs and vulnerability to violence make

10   double-celling excessively risky, plaintiff has failed to allege that any defendant knew of and

11   specifically disregarded that risk.  Plaintiff claims that all defendants acted with "deliberate

12   indifference to [his] health and safety," ECF No. at 13, but he must provide more than "labels and

13   conclusions" or offer a mere "formulaic recitation of the elements" of an Eighth Amendment

14   claim.  See Twombly, 550 U.S. at 555.  Beyond stating that defendants as a whole refuse to return

15   him to single-cell status, plaintiff alleges no facts specific to any defendant.  In fact, after listing

16   the defendants at the top of the complaint, plaintiff does not mention them again.

17          The top of the complaint identifies two groups of defendants.  First, plaintiff alleges that

18   defendants Tyler, Calderon, and Valenzuela denied him redress on his grievances and/or appeals.

19   (ECF No. 1 at 8.)  But plaintiff pleads no facts regarding the precise nature of any grievances or

20   appeals.  "An allegation that a prison official inappropriately denied or failed to adequately

21   respond to a grievance, without more, does not state a claim under § 1983." Evans v. Skolnik,

22   637 Fed. Appx. 285, 288 (9th Cir. 2015); see also Thompson v. Hill, No. 24-CV-0357-MMA

23   (DDL), 2024 WL 3418000, at *5 (S.D. Cal. July 15, 2024) (screening out Eighth Amendment

24   claims against defendants whose only participation was signing 602 grievances and appeals

25   denying challenges to single-cell status).  Accordingly, plaintiff has not alleged facts showing

26   Tyler, Calderon, or Valenzuela acted with deliberate indifference.  However, if those defendants

27   were involved in reviewing his grievances and/or appeals concerning double celling and were

28   therefore aware of the alleged risks of double celling, Plaintiff may allege facts supporting such

1   specific involvement and awareness.

2       Second, plaintiff alleges defendants Carozzo, Foreman, and Mitchell were members of the

3   classification committee that removed plaintiff's single-cell status in November 2017.  (ECF No.

4   1 at 8.)  Plaintiff similarly alleges that defendants Hintz and Thibodeaux were members of a

5   subsequent, undated classification committee that refused to reinstate his single-cell status.  (Id.)

6   But plaintiff pleads no other facts regarding those committee members, such as what information

7   was before them or whether they were personally aware of any health and safety risks.  Plaintiff

8   states that the "[d]efendants, by their own reports, reviewed the medical documents detailing

9   plaintiff's problems," ECF No.1 at 10, but it is unclear which defendants he is referring to or

10  whether the reports relate to a classification committee or a grievance/appeal.

11      In sum, there are not enough details from which to infer that any of the defendants knew

12  of and disregarded any specific risks associated with a double cell.  See Thompson, 2024 WL

13  3418000, at *6 (screening out claim against reasonable accommodation panelists who denied

14  single-cell status where plaintiff failed to allege facts sufficient to show that any panelist, or the

15  panel as a whole, was deliberately indifferent); Shaw v. Macomber, No. 3:25-CV-0089 RBM

16  MSB, 2025 WL 1361301, at *4 (S.D. Cal. May 8, 2025) (screening out Eighth Amendment claim

17  where plaintiff alleged no facts specific to any defendant "beyond stating that Defendants 'refuse

18  to accommodate' his requests for single cell housing").  For this reason, plaintiff has not stated a

19  cognizable Eighth Amendment claim against any defendant.

20      Plaintiff will be given an opportunity to amend his complaint and fix these problems.

21  Plaintiff must allege specific facts that show each defendant knew about the risks he faced and

22  ignored them.  He may also attach the referenced reports or other supporting documents.  See

23  Fed. R. Civ. P. 10(c).

24      In addition, because plaintiff states that he refuses a cellmate, it is not clear whether he

25  was ever double-celled after the loss of his single-cell status in 2017.  Typically, "generalized

26  fears of assault by any future cellmate and claims that permanent single-cell housing are

27  necessary to avoid potential harm, are insufficient to state a plausible claim for relief under the

28  Eighth Amendment."  Thompson, 2024 WL 3418000, at *7 (collecting cases) (cleaned up).  But

because the complaint vaguely references past in-cell violence, ECF No. 1 at 10, plaintiff will also be given leave to amend the complaint to describe in more detail the <u>specific</u> health and safety risks he faces from placement in a double cell.

### B. RVRs

Next, plaintiff claims the repeated RVRs he receives for refusing to double cell are a form of cruel and unusual punishment.  To proceed on this claim, plaintiff must allege that defendants issued the RVR penalties with "deliberate indifference" to a "substantial risk of serious harm" or the "denial of the minimal civilized measure of life's necessities."  <u>Farmer</u>, 511 U.S. at 834.

As an initial matter, the complaint does not explain who issued the RVRs.  For this reason alone, plaintiff's Eighth Amendment claim premised on the issuance of RVRs fails for inadequate linkage.  Plaintiff will be given leave to amend to fix this problem.  He is advised that the amended complaint must specifically identify how each named defendant is involved.  <u>Arnold v. Int'l Bus. Machs. Corp.</u>, 637 F.2d 1350, 1355 (9th Cir. 1981).  There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation.  <u>Id.</u>; <u>Johnson v. Duffy</u>, 588 F.2d 740, 743 (9th Cir. 1978).  Furthermore, "[v]ague and conclusory allegations of official participation in civil rights violations are not sufficient."  <u>Ivey v. Bd. of Regents</u>, 673 F.2d 266, 268 (9th Cir. 1982) (citations omitted).

Moreover, plaintiff's allegation that he lost his privilege to have a diet not cooked by the state, ECF No. 1 at 11, does not amount to a denial of "the minimal civilized measure of life's necessities."  The Eighth Amendment requires only that prisoners receive food that is adequate to maintain health; it need not be tasty or aesthetically pleasing."  <u>LeMaire v. Maass</u>, 12 F.3d 1444, 1456 (9th Cir. 1993).  If plaintiff chooses to amend, he must explain how his loss of food privileges was inadequate to maintain health or otherwise risked his health and safety.

Finally, plaintiff's claim that the RVRs negated his chances for parole is likely <u>Heck</u>-barred.  In <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994), the Supreme Court held that incarcerated persons' claims that necessarily implied the invalidity of their conviction or sentence could not be maintained under § 1983 unless they proved "that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to

7

1    make such determination, or called into question by a federal court's issuance of a writ of habeas

2    corpus."  Id. at 486–87 (citation omitted).  In Edwards v. Balisok, 520 U.S. 641, 646-48 (1997),

3    the Supreme Court extended Heck's "favorable termination" rule to RVR and other prison

4    disciplinary proceedings that resulted in the loss of good-time credits.

5         It is not clear whether plaintiff is claiming that the RVRs affected the overall length of his

6    confinement.  If plaintiff chooses to amend, he must clarify the nature of his RVR-related claims.

7    See Trimble v. City of Santa Rosa, 49 F.3d 583, 585 (9th Cir. 1995) (Heck-barred claims should

8    be dismissed "with an opportunity to amend in order to state . . . injury apart from that resulting

9    from his conviction and sentence.")  He is advised that in the amended complaint, he may

10   challenge RVR penalties, such as loss of food privileges, that had no effect on his conviction and

11   sentence.  Ramirez v. Galaza, 334 F.3d 850, 858 (9th. Cir. 2003).  If he insists on challenging the

12   RVRs for their impact on his parole, he must allege that the RVR penalties have been invalidated

13   or overturned.  Otherwise, his claim lies in habeas.  Nettles v. Grounds, 830 F.3d 922, 927-29

14   (9th Cir. 2016) (en banc) (reviewing Supreme Court case law holding that when a challenge

15   would necessarily affect the duration of incarceration, it must be brought through a habeas

16   petition rather than in an § 1983 action).

17        **II.    Fourteenth Amendment Procedural Due Process**

18        Plaintiff also alleges he has a "protected liberty interest" in single-cell status based on his

19   eligibility under CDCR guidelines.  (ECF No. 1 at 13.)  The undersigned construes this language

20   as asserting a Fourteenth Amendment procedural due process claim.

21        State-created liberty interests protected by the Due Process Clause are generally limited to

22   "freedom from restraint … that imposes atypical and significant hardship on the inmate in

23   relation to the ordinary incidents of prison life."  Sandin v. Conner, 515 U.S. 472, 483–84 (1995).

24   The inquiry turns not on "the wording of prison regulations" but on "the hardships caused by the

25   prison's challenged action relative to 'the basic conditions' of life as a prisoner."  Mitchell v.

26   Dupnik, 75 F.3d 517, 522 (9th Cir. 1996) (quoting Sandin, 515 U.S. at 485).

27        Even assuming plaintiff qualified for single-cell status under the CDCR guidelines, the

28   threshold Fourteenth Amendment inquiry is whether double-cell status would impose an "atypical

1   and significant hardship" on plaintiff.  Courts have repeatedly held that it does not.  <u>Harper v.</u>

2   <u>Schwarzenegger</u>, 613 F. App'x 648 (9th Cir. 2015) (no protected liberty interest in single-cell

3   status classification) (citations omitted); <u>Waters v. Flores</u>, No. 1:10-CV-2169 AWI BAM PC,

4   2012 WL 484530, at *3 (E.D. Cal. Feb. 14, 2012) (collecting cases and concluding plaintiff has

5   no constitutional right to have his own cell); <u>see also</u> <u>Wilkinson v. Austin</u>, 545 U.S. 209, 221

6   (2005) ("[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to

7   more adverse conditions of confinement.").  Accordingly, despite defendants' alleged

8   noncompliance with CDCR guidelines, plaintiff has not stated a cognizable Fourteenth

9   Amendment procedural due process claim based on the revocation of his single-cell status.

10                                              **LEAVE TO AMEND**

11          Having conducted the screening required by 28 U.S.C. § 1915A, the court finds that the

12   complaint does not state valid claims for relief under the Eighth or Fourteenth Amendments.

13   Plaintiff's Eighth Amendment claims fail, in part, because the complaint does not establish any

14   defendants' deliberate indifference.  Plaintiff's Fourteenth Amendment procedural due process

15   claim fails because plaintiff does not have a protected liberty interest in a single cell.  Because of

16   these defects, the court will not order the complaint to be served on defendants.

17          Plaintiff may try to fix the problems <u>with his Eighth Amendment claim only</u> by filing an

18   amended complaint.  In deciding whether to file an amended complaint, plaintiff is instructed to

19   carefully review the authorities provided above.  Plaintiff is also informed that the court will not

20   refer to a prior pleading in order to make his amended complaint complete.  Local Rule 220

21   requires that an amended complaint be complete in itself without reference to any prior pleading.

22   This is because, as a general rule, an amended complaint supersedes any prior complaints.  <u>Loux</u>

23   <u>v. Rhay</u>, 375 F.2d 55, 57 (9th Cir. 1967) (citations omitted).  Once plaintiff files an amended

24   complaint, any previous complaint no longer serves any function in the case.  **Therefore, in an**

25   **amended complaint, as in an original complaint, each claim and the involvement of each**

26   **defendant must be sufficiently alleged.**

27   ////

28   ////

                                                      9

**CONCLUSION**

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's request for leave to proceed in forma pauperis (ECF No. 2) is GRANTED.

2. Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action. Plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). All fees shall be collected and paid in accordance with this court's order to the appropriate agency filed concurrently herewith.

3. Plaintiff's complaint fails to state a claim upon which relief may be granted, see 28 U.S.C. § 1915A, and will not be served.

4. Within thirty days from the date of service of this order, plaintiff may file an amended complaint that complies with the requirements of 42 U.S.C. § 1983, the Federal Rules of Civil Procedure, and the Local Rules of Practice. The amended complaint must bear the docket number assigned this case, **2:24-cv-02166 SCR P,** and must be labeled **"First Amended Complaint."**

5. Failure to file an amended complaint in accordance with this order will result in a recommendation that this action be dismissed pursuant to Rule 41(b) of the Federal Rules of Civil Procedure.

6. The Clerk of the Court is directed to send plaintiff a copy of the prisoner complaint form used in this district.

DATED: September 2, 2025

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE